**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
WESTERN DIVISION**

RIVER REGION MEDICAL CORPORATION                    PLAINTIFF
d/b/a RIVER REGION HEALTH SYSTEM
f/k/a PARKVIEW REGIONAL MEDICAL CENTER

VERSUS                         CIVIL ACTION NO. 5:07cv36-DCB-JMR

AMERICAN LIFECARE, INC.; AMERICAN
LIFECARE NETWORKS, LLC; PRIVATE
HEALTHCARE SYSTEMS, INC.; PRIVATE
HEALTHCARE SYSTEMS, LTD; JOHN DOES 1-10;
and ABC COMPANIES 1-10                               DEFENDANTS

VERSUS

FOX-EVERETT, INC.                          THIRD PARTY DEFENDANT

VERSUS

GENWORTH FINANCIAL f/k/a GE GROUP
LIFE ASSURANCE COMPANY                   FOURTH PARTY DEFENDANT

## OPINION & ORDER

This matter comes before the Court on the defendants' Motion for Summary Judgment [**docket entry no. 47**] and the plaintiff's Motion for Declaratory Judgment [**docket entry no. 57**].  Having carefully considered the Motions, numerous memoranda in support and opposition thereof, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. FACTS

The plaintiff River Region Medical Corporation ("River Region"), a Mississippi corporation, operates a hospital in Vicksburg, Mississippi.  The several defendants American Lifecare,

Inc., American Lifecare Networks, LLC, Private Healthcare Systems, Inc., and Private Healthcare Systems, Ltd., are entities organized under the laws of Louisiana, Louisiana, Delaware, and Colorado, respectively.  MultiPlan, Inc. ("MultiPlan") is the successor in interest to these four defendants.[1]  MultiPlan operates as a preferred provider organization ("PPO"), assembling into networks various healthcare providers who agree to render medical services at discounted rates.  At all relevant times, River Region was a member of MultiPlan's provider network pursuant to a Preferred Provider Hospital Agreement ("PPH Agreement") in force between the two entities.

Third-party defendant Fox-Everett, Inc. ("Fox-Everett"), a Mississippi corporation, is a third-party administrator of benefit plans, one of which is the Cappaert Manufactured Housing Employee Benefit Plan ("Cappaert Plan").  Fourth-party defendant Genworth Financial ("Genworth") is the stop-loss insurance carrier for the Cappaert Plan.  At all times pertinent, Fox-Everett and MultiPlan were parties to an agreement ("Fox-Everett/MultiPlan Agreement") whereby Fox-Everett acquired access to MultiPlan's network of participating providers for the employee benefit plans it administers.

After rendering medical services to an individual member of

---

[1] Except as where otherwise noted, the Court will refer to the defendants collectively as MultiPlan.

the Cappaert Plan during two separate hospital stays in 2005,[2] River Region submitted bills totaling $1,121,268.30 to the Cappaert Plan for payment.  According to River Region and MultiPlan, pursuant to the terms of the PPH Agreement the Cappaert Plan was entitled to receive a 30% discount from the $1,121,268.30 in billed charges — — — resulting in a reduced balance due of $784,887.81. On February 6, 2006, Fox-Everett authorized a payment from the Cappaert Plan to River Region for only $356,970.61, an amount which Fox-Everett deemed to comport with "reasonable and customary" charges for the same health services in the local area.  After River Region complained to MultiPlan about the remaining $427,917.20 balance which had not been paid by the Cappaert Plan, MultiPlan advised Fox-Everett on June 19, 2006, that $784,887.81 was the correct allowable amount pursuant to the PPH Agreement for the inpatient services which had been rendered by River Region; however, River Region never received any additional payments from

---

[2] The unnamed patient's second admission to River Region occurred on November 15, 2005, and River Region billed the Cappaert Plan for services rendered between November 15 and December 3, 2005.  The record is contradictory on the date of the patient's first admission to River Region.  The billing statement from River Region reflects an admission date of July 16, 2005, as does paragraph 7 of the affidavit of Marcy Feller, Executive Vice President and General Counsel for MultiPlan; however, MultiPlan's June 19, 2006, Hospital Claim Pricing Appeal to Fox-Everett lists the first admit date as August 1, 2005.  At any rate, River Region's billing statement for the first hospital stay only lists charges for services rendered between August 1 and September 29, 2005.  The parties do not point out the discrepancy in the first admission date, and the Court will presume that the inconsistency is immaterial.

the Cappaert Plan toward the allegedly outstanding $427,917.20 balance.

## II. PROCEDURAL HISTORY

Invoking this Court's diversity of citizenship subject matter jurisdiction under 28 U.S.C. § 1332, River Region filed a complaint against MultiPlan on February 22, 2007, asserting several claims[3] therein directed toward recovery of the unpaid charges. On April 2, 2007, MultiPlan named Fox-Everett in its Answer and Third-party Complaint[4], alleging that Fox-Everett is in breach of the Fox-Everett/MultiPlan Agreement and that Fox-Everett must indemnify MultiPlan should River Region obtain a judgment against MultiPlan. Fox-Everett responded by instituting a counterclaim against MultiPlan, a cross-claim against River Region, and a fourth-party complaint against Genworth on May 30, 2007. Genworth answered the fourth-party complaint and asserted a counterclaim against Fox-Everett on August 17, 2007.

On June 25, 2007, Fox-Everett filed a Motion for Summary Judgment as to Third Party Claim [docket entry no. 21] against

---

[3] These claims are for breach of contract, willful breach of contract, fraudulent inducement, breach of covenant of good faith and fair dealing, negligent misrepresentation, intentional misrepresentation, common law bad faith, violation of Mississippi's consumer protection laws, injunctive relief, punitive damages, and attorney fees.

[4] American Medical Bill Review was also impleaded as a third-party defendant in this matter by MultiPlan but has since been dismissed without prejudice by Order [docket entry no. 16] of this Court.

4

MultiPlan.  On November 14, 2007, MultiPlan filed its Motion for Summary Judgment [docket entry no. 47] against River Region.  On December 21, 2007, River Region filed a Motion for Declaratory Judgment [docket entry no. 57], asking the Court to determine Fox-Everett's rights and obligations under the Fox-Everett/MultiPlan Agreement.  The Motions by MultiPlan and River Region are now before the Court.

### III.  ANALYSIS

*A. MultiPlan's Motion for Summary Judgment*

1. Summary Judgment Standard

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).[5]  The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

---

[5]  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (internal citations omitted).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

2. Arguments of MultiPlan and River Region

In its Motion, MultiPlan asserts that it is entitled to summary judgment on River Region's breach of contract and willful breach of contract claims because the undisputed facts indicate that it negotiated the Fox-Everett/MultiPlan Agreement to require

Fox-Everett and the plans represented by Fox-Everett to pay River Region in accordance with the terms of the PPH Agreement. MultiPlan also argues that summary judgment should be granted on River Region's claims for fraudulent inducement, negligent misrepresentation, and intentional misrepresentation because River Region has failed to identify any representation MultiPlan made which was false. MultiPlan further contends that it is entitled to a judgment as a matter of law on River Region's claims for breach of the duty of good faith and fair dealing and bad faith. In addition, MultiPlan posits that summary judgment is appropriate on River Region's claim under the Mississippi Consumer Protection Act because River Region is not qualified to sue under the private right of action created in the Act. Lastly, MultiPlan declares that River Region's claims for injunctive relief, punitive damages, and attorney fees fail as a matter of law because MultiPlan has fulfilled its contractual obligations to River Region.

In its response in which it only addresses MultiPlan's arguments on the breach of contract claims, River Region says that it is undisputed that MultiPlan was obligated to negotiate with plans to make payments to River Region in accordance with the PPH Agreement; therefore, the construction of the PPH Agreement is not in dispute. Rather, the only issue for determination is whether the Fox-Everett/MultiPlan Agreement "bound Fox-Everett to pay (or require payment of) the contracted rate of 70% of billed charges as

set forth in the [PPH] Agreement." River Region's Resp. MultiPlan's Mot. Summ. J. ¶ 11. If the answer is "yes," then, according to River Region, MultiPlan discharged its obligations under the PPH Agreement and Fox-Everett is bound to abide by the 70% percent standard set forth in the PPH Agreement; if the answer is "no," then MultiPlan has violated the PPH Agreement and is liable to River Region for damages arising from such a breach.

3. Applicable Law

A federal court sitting in diversity must apply state substantive law. Times-Picayune Pub. Corp. v. Zurich Am. Ins. Co., 421 F.3d 328, 334 (5th Cir. 2005) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).

4. Application of Law to Facts

*i. Breach of Contract and Willful Breach of Contract Claims*

According to Section 21.1 of the PPH Agreement, Mississippi law shall be used to interpret and construe the terms of the PPH Agreement between River Region and MultiPlan. Under Mississippi law, "[t]he primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties." Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857 So. 2d 748, 752 (Miss. 2003). To achieve this purpose, this Court must undertake an "objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence. The . . . court is not at liberty to infer

8

intent contrary to that emanating from the text at issue." Id. "When a contract is unambiguous, determining its meaning is a question of law for the court to decide, and the contract must be enforced as written." Miss. Transp. Comm'n v. Ronald Adams Contractor, Inc., 753 So. 2d 1077, 1087 (Miss. 2000).

River Region and MultiPlan agree that Sections 2.1[6] and 3.1[7] of the PPH Agreement create a duty for MultiPlan to enter agreements with plans[8] wherein the plans are obligated to make payments to River Region in accordance with the terms of the PPH Agreement. The Court will assume that the PPH Agreement does so obligate MultiPlan.

The dispositive issue, then, is whether MultiPlan fulfilled this contractual duty to River Region. To answer this question, the Court must consult the Fox-Everett/MultiPlan Agreement.[9]

---

[6] Section 2.1 of the PPH Agreement reads as follows: "Hospital authorizes American LIFECARE to negotiate agreements for payment to Hospital by Plan for delivery of Covered Services to Covered Individuals pursuant to this Agreement."

[7] Section 3.1 of the PPH Agreement states that "American LIFECARE shall negotiate with Plan for payment to Hospital for delivery of Covered Services to Covered Individual."

[8] Section 1.3 of the PPH Agreement defines the term "Plan" as "an employer benefit plan, insurance company, health insurance plan, trust, workers compensation plan, third party payor, third party administrator or other entity which provides health/medical benefits to Covered Individuals and who has contracted with American LIFECARE to obtain the services of the Hospital through the American LIFECARE PPO."

[9] Section 15.1 of the Fox-Everett/MultiPlan Agreement provides that "[t]his agreement shall be governed in all respects by the

Section 2.1 of that contract reads as follows: "American LIFECARE shall deliver to Fox-Everett access to Participating Providers who provide certain Covered Services to Plan Covered Individuals <u>in exchange for a negotiated payment by Plan</u>[10] <u>pursuant to a preferred provider agreement</u>."  (emphasis added.)

The Court is of the opinion that through this provision of the Fox-Everett/MultiPlan Agreement, MultiPlan obligated the Cappaert Plan (acting through its agent[11] Fox-Everett) to pay in accordance

---

laws of the State of Louisiana."  Under Louisiana law, "the interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning."  <u>Abshire v. Vermilion Parish Sch. Bd.</u>, 848 So. 2d 552, 555 (La. 2003).  Moreover, "[m]eaning and intent of parties to a written instrument is ordinarily determined from [an] instrument's four corners and extrinsic evidence is inadmissible either to explain or contradict [an] instrument's terms."  <u>Id.</u> at n.5.

[10] Section 1.4 of the Fox-Everett/MultiPlan Agreement defines a "Plan" as "an employer benefit plan, insurance company, trust, health insurance plan, third party payor, third party administrator or other entity which provides health/medical benefits to Covered Individuals and who has contracted with American LIFECARE to obtain the services of Participating Providers in exchange for a negotiated rate."

[11] Fox-Everett represented to the Court in its written submissions and at oral argument that when it entered the agreement with MultiPlan, it was acting as the agent for various disclosed benefit-plan principals, including the Cappaert Plan.  Fox-Everett's Memo. Supp. Mot. Summ. J. at 16-17; Aff. Larry Vance at ¶¶ 8, 10.  River Region concedes that in the Fox-Everett/MultiPlan Agreement, Fox-Everett was acting "as a binding agent" for the Cappaert Plan.  River Region's Resp. MultiPlan's Mot. Summ. J. at n.1; <u>accord</u> <u>id.</u> at nn.13, 14.  MultiPlan also appears to believe that Fox-Everett was acting on behalf of the plans it administers when it signed the Fox-Everett/MultiPlan Agreement.  MultiPlan's Memo. Supp. Mot. Summ J. at 13; <u>see</u> <u>also</u> MultiPlan's Opp. Fox-Everett's Mot. Summ. J. at 10; <u>accord</u> <u>id.</u> at n.23.

with the terms of the PPH Agreement between River Region and
MultiPlan.  In so doing, MultiPlan clearly "negotiate[d] [an]
agreement[] for payment to Hospital by Plan for delivery of Covered
Services to Covered Individuals pursuant to [the PPH] Agreement"
and thereby discharged its contractual duty under the PPH Agreement
to River Region.[12]  PPH Agreement § 2.1.  Accordingly, MultiPlan is
entitled to a judgment as a matter of law on River Region's breach
of contract and willful breach of contract claims.

  ii. *Fraudulent Inducement, Negligent Misrepresentation, and
       Intentional Misrepresentation Claims*

    Under Mississippi law, a claim for fraudulent inducement must
satisfy nine elements: 1) a representation, 2) that is false, 3)
that is material, 4) the speaker's knowledge of its falsity or
ignorance of its truth, 5) the speaker's intent that the hearer act

---

[12] The Court is quick to point out that in no way has it
determined: 1) whether, in the Fox-Everett/MultiPlan Agreement,
Fox-Everett assumed any independent obligation to pay River Region
for medical services rendered to participants in the Cappaert Plan;
2) whether a claim brought by River Region against the Cappaert
Plan and/or Fox-Everett to recover the unpaid balance which is at
the heart of this dispute would be preempted by the Employee
Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§
1001-1461 (2006); or 3) the amount, if any, the Cappaert Plan
and/or Fox-Everett would be obligated to pay toward the unpaid
charges by virtue of the provisions of the Cappaert Plan and/or the
PPH Agreement.
    Because the Court has found that MultiPlan discharged its
obligations to River Region under the PPH Agreement and this
determination is wholly dispositive of the defendant's Motion for
Summary Judgment on the plaintiff's breach of contract and willful
breach of contract claims, the Court need not reach these issues.
Moreover, it would be improper for the Court to address such
questions because there is no claim before the Court which calls
for inquiry therein.

upon it in the manner reasonably contemplated, 6) the hearer's ignorance of its falsity, 7) the hearer's reliance on its truth, 8) the hearer's right to rely thereon, and 9) the hearer's consequent and proximate injury. Am. Home Life Ins. Co. v. Hollins, 830 So. 2d 1230, 1239 (Miss. 2002). "The elements of intentional misrepresentation are identical to the elements of fraud." Gallegos v. Mid-South Mortgage & Inv. Inc., 956 So. 2d 1055 (Miss. Ct. App. 2007). As to a claim for negligent misrepresentation, under Mississippi law the elements thereof are as follows: (1) a misrepresentation or omission of a fact; (2) that the misrepresentation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance. Horace Mann Life Ins. Co. v. Nunaley, 960 So. 2d 455 (Miss. 2007).

MultiPlan argues that summary judgment should be granted in its favor because all three claims require a false representation and River Region has failed to identify a misrepresentation made by MultiPlan. The Court agrees. River Region has failed to come forward with evidence sufficient to establish the existence of a false representation made by MultiPlan; accordingly, MultiPlan is

entitled to a judgment as a matter of law on these three claims.

   *iii. Breach of Covenant of Good Faith/Fair Dealing and Bad Faith Claims*

   "All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." Cenac v. Murry, 609 So. 2d 1257, 1272 (Miss. 1992). "Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party. The breach of the good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." Id. Bad faith involves more than mere negligence; it implies conscious wrongdoing "because of dishonest purpose or moral obliquity." Bailey v. Bailey, 724 So. 2d 335, 338 (Miss. 1998). Because the Court has already held that MultiPlan has fulfilled its relevant obligations under the PPH Agreement, River Region's claim for breach of the implied covenant of good faith and fair dealing fails. In addition, the plaintiff cannot recover on its bad faith claim because it has failed to present any evidence suggesting conscious wrongdoing by MultiPlan. For these reasons, summary judgment shall be granted for MultiPlan on these two claims.

   *iv. Mississippi Consumer Protection Act Claim*

   Mississippi Code Annotated § 75-24-5 (Rev. 2002) prohibits "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce . . . ." Section 75-24-15 creates a private right of action for a "person

13

who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property . . . as a result of the use of employment by the seller, lessor, manufacturer or producer of a method, act or practice prohibited by § 75-24-5 . . . ."

MultiPlan argues, and the Court is inclined to agree, that the private right of action created by § 75-24-15 does not provide a viable avenue of recovery for the plaintiff in this case because River Region is not a person who purchased or leased goods or services from MultiPlan primarily for personal, family, or household purposes.  To the contrary, MultiPlan's provision of services to River Region was apparently strictly for commercial, for-profit reasons.  Therefore, because the Mississippi Consumer Protection Act affords no private right of action to River Region in the matter sub judice, MultiPlan is entitled to a judgment as a matter of law on this claim.

   *v. Claims for Injunctive Relief, Punitive Damages, and*
      *Attorney Fees*

Because MultiPlan has not breached its relevant obligations to River Region under the PPH Agreement and River Region has not come forward with any evidence demonstrating its entitlement to injunctive relief, punitive damages, or attorney fees, summary judgment shall follow for MultiPlan on these claims.

   *B. River Region's Motion for Declaratory Judgment*

   To the extent that River Region's Motion for Declaratory

14

Judgment seeks a determination of Fox-Everett's obligations, if any, under the Fox-Everett/MultiPlan Agreement in order to determine whether MultiPlan fulfilled its obligations to River Region under the PPH Agreement, the Court is of the opinion that this Motion has become moot by virtue of the Court's decision that MultiPlan has discharged its pertinent PPH Agreement obligations to River Region.  Accordingly, said Motion shall be denied without prejudice.

### V. CONCLUSION & ORDER

Based upon the foregoing analysis and authorities,

**IT IS HEREBY ORDERED** that the defendants' Motion for Summary Judgment [**docket entry no. 47**] is **GRANTED.**

**IT IS FURTHER ORDERED** that the plaintiff's Motion for Declaratory Judgment [**docket entry no. 57**] is **DENIED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that the parties with claims remaining in this action shall show cause to this Court within five (5) days of the entry of this Opinion & Order whether a justiciable case or controversy under Article III, Section 2 of the United States Constitution remains before the Court.

**SO ORDERED,** this the ___17th___ day of March 2008.


___s/ David Bramlette___
**UNITED STATES DISTRICT JUDGE**

15